Case number 17-1133 at L. Tramont Manufacturing, LLC Petitioner v. National Labor Relations Board. Mr. Renning for the petition. Mr. Seid for the respondent. Good morning, your honors. May it please the court. My name is Tony Renning. The issue before the court this morning is whether the board's decision is contrary to the court's controlling precedent and therefore must be set aside. The board's position is predicated upon its view that Tramont's failure to provide notice and refusal to bargain the effects of a matter within a contract requires a clear and unmistakable waiver. The court's precedent, in contrast, consistently rejects that view, considering the contents of a collective bargaining agreement is the question of contract review. That being said, before the court in this case, there is no dispute that the board has found and the board has since conceded that Tramont is a Burns successor, that Tramont lawfully established the initial terms and conditions of employment, and three, that Tramont's decision to lay off 12 employees in this particular case was not a subject of bargaining, presumably because that was already included within the initial terms and conditions of employment. So consistent with this court's decision in Enloe Medical Center, it would be rather unusual to interpret a contract as granting an employer the unilateral right to make a particular decision, but as to reserving the union's rights to bargain over the effects of that decision. In this particular case, again... Is the handbook a contract? The handbook is a contract, Your Honor. The handbook said it wasn't a contract. It certainly doesn't bind the employer. Well, this court has decided in SF Market Street Healthcare, a similar case, a Burns successor, where the employer distributed an employee handbook, that that handbook provision did constitute terms and conditions of employment. Oh, yeah, no. And I understand where you're going with respect to the language of the handbook itself. The handbook itself is addressed to not only the bargaining unit, but it also addressed certain other non-bargaining unit employees, and the concern from that standpoint was to avoid altering the at-will employment relationship that governed those particular individuals. So that was the distinction in this particular case. But the handbook itself was conveyed or communicated to the union that it was the initial terms and conditions of employment, therefore constituting a contract. We advised the union what those terms were.  Is it a contract with the union? The... Handbook. Yes. It's a contract with the union. It's not a collectively bargaining contract, but it's a contract that governs the terms and conditions of the union employees. Well, isn't it a contract? If it's anything, it's a contract with the employees who accepted continued work. It's not with the union, right? It's not a collective bargained agreement. Well, you're right, Your Honor. We didn't collectively bargain with the union. Right. You cited Menlo. Are there any cases that you know of which hold that an employer who, as here, reserves the right to layoff also, that that implies that they reserve the right to deal with severance and other benefits? Is there any case that says that? Well, so it's the, with respect to layoff, specifically, that if the employer reserves the right to layoff... Yes, like in this case. Right. Is there any case that says that that implies that the employer has also retained the right to unilaterally resolve the question of severance pay and other terms of layoffs? Yeah. I think that's consistent with this Court's, maybe not with respect to the layoff question itself, but it's consistent with this Court's precedent for 25-plus years that if the contract specifically addresses a mandatory subject of bargaining... I was asking you whether there's a case in the context of layoffs. That's all I want you to think. That's all I want to know. I, off the top of my head, I can't cite one specifically with respect to layoff. Again, it being a mandatory subject of bargaining, and this Court has recognized the fact that, again, when there is a mandatory subject of bargaining and it's addressed by the contract terms, then under that scenario there's no obligation then to provide or to negotiate, to provide notice and to negotiate the effects. Can I ask a question about that? Yeah. 11.22 of the handbook, JA 151, any severance pay offered is at company discretion. Doesn't that sound like that's already been, that that's one of the initial terms and conditions? I'm just sort of wondering why no one's pointed to that. I can't explain that, Your Honor, but, yes, absolutely. Why wasn't that? Sometimes there's some secret reason why the, particularly a party who it might help, hasn't raised it, is there? Yeah, I can't explain that, Your Honor. I don't know that there's a specific reason as to why it wasn't raised, other than the fact that the employer's basis for their arguments in this particular case is based upon the contract coverage burden. So this is one, unlike, if you were responding to a contract coverage argument, where the argument is it talks about layoffs but not about severance pay, it seems like the logical thing would be to say, oh, no, it talks about severance pay. Yeah, and I think between the two parties the focus got to be on whether there was layoff language in place, and then with respect to the duty to provide notice and the duty to bargain the effects, I kind of maybe got lost in the shuffle, Your Honor. So is there any case involving initial terms and conditions where the NLRB has applied the waiver rule for the contract coverage rule? You mean initial terms and conditions as a burn successor? Yeah. Yeah, so Monterey newspaper. I didn't see what rule at all they were applying in Monterey. I mean, I get the results of Monterey, but what rule were they applying? Did they use the words? Maybe I read it too fast. Yeah, Monterey and I think SF Market. Wait, wait. Sorry. On Monterey. Okay. Did they use either the words waiver or the words contract coverage? What did they say they were using there?  It holds something along the lines that you'd like it to hold, that is establishment of the pay bans means that they can establish the actual pay. Right. But I don't see what – Based upon the terms and conditions of that. Yeah, yeah. But I don't see any – it doesn't say we're applying a waiver rule or we're applying a contract coverage rule or we're applying any other kind of rule. Yeah. No, I'm not – I would tend to agree with you, Your Honor, that it doesn't specifically state that. Again, reaching the conclusion, though, based upon the initial terms and conditions that in Monterey they were able to establish the new pay system for initial hires. So our contract coverage rule is about a collectively bargained contract. Right. We don't have any contract coverage rule, at least no case, where it's an agreement between an individual employee and the employer, which is what this is, right? Well, I don't know that I'd necessarily characterize it as that. I understand where you're going with respect to that specific question. Again, this isn't – from that perspective, it's a novel issue before the court to some extent. The trademark certainly cites case law that indicates that contract coverage applies in this particular case and applies to Byrne successors. The union cites situations where it's a new union and there aren't any terms and conditions of employment. But I guess what I'd leave the court with is if we don't – you're correct, it's not a collectively bargained agreement in this particular case. The employer was free to set the initial terms and conditions of employment. But it wasn't even an agreement with the union. The union didn't agree to it, right? The union didn't agree to it, but the union was bound by the terms and conditions of the agreement just as the employer was. But the theory behind the contract coverage idea is that the union had an opportunity to bargain about the issue. And if it isn't in there, then we assume it chose not to. And you can't apply that in a situation like this where the union had nothing to do with the handbook. And it seems to me you can't even apply it, even if you see this as a contract between the employer and the employees who chose to keep working. They didn't get to bargain over that at all. True, they could have decided not to work there, but there was no collective bargaining from which you could assume that there was a decision by one of the parties to leave the issue up to the employer. Is that correct? Your Honor, you're correct, but I respectfully disagree that that – I'm correct, but you disagree? Well, I disagree to the extent that there is no obligation to collectively bargain in this particular case. It's a burn successor, so they sit on a unique footing. I didn't say that. I didn't. That's not my point. The company is a burn successor, and the Board agrees with that. That wasn't my point. My point was this handbook is not – the ALJ and the Board said, this handbook is not a contract that implicates the contract coverage. If it's not a contract, then, Your Honor, what is it? There was offer. It's not a collective bargaining contract, correct? Correct. Isn't that right? And aren't I right that the contract coverage theory turns on the fact that the contract was collectively bargained? No. Again, Your Honor, I think it turns on the theory that there's a contract in place. I mean, in this case, if you turn the tables, had the Tremont in this particular case unilaterally changed the terms and conditions of employment, whether that be vacation or health insurance benefits or whatever it was, the union or the Board would have objected to that and said that the employer was bound by the initial terms and conditions that it established and, therefore, couldn't unilaterally change those terms and conditions. So in Enloe, this is the case you're relying on, right? Among others. Among others. I mean, Heartland. Yes, and they explain the underlying basis of our contract coverage doctrine, right? And that is that because under Section 301 of the LMRA, parties to a collective bargaining agreement are entitled to bring a dispute as to the interpretation of the contract directly to federal court, we don't defer at all. We don't have our normal deference, right? Correct. And so we're going to interpret it, and we interpret the basic agreement as covering effects. That's our interpretation. When it's not under contract coverage, when it's not subject to an independent action under the LMRA, then we have to defer to the Board's reading of the National Labor Relations Act. We're in agreement on that. We are. That's the basis of our claim. This individual handbook, could employees come in and bring a Section 301 case? No. No. With the union. No, could the union bring a section for interpretation of the contract? I think if, again, back to my example, had the employer made a unilateral change to other vacation benefits or whatever, the union could have come in and made an LMRA. LMRA or just a unfair labor practice case? I've never heard of it. Maybe I'm not, I don't in any way suggest I'm a great expert on this, but I've never heard of being able to come under the LMRA to bring a handbook claim. Again, it's not collectively bargaining. But it's a contract. It's the existing initial terms. It's the terms and conditions of employment that the parties are bound by. The question is, and there's no trick answer to this because I don't know the answer. Right. Does the Labor Management Relations Act permit an individual employee to make a claim that the initial conditions were violent? I can't answer that. You don't know the answer to that. Okay. Further questions? How long can initial conditions continue? So the employer gets to set the initial terms and conditions, and then the parties from there are obligated to bargain those initial terms and conditions. They can settle on those terms or they can come to new terms and conditions on a successor contract, if you will. The collective bargaining can take years. So essentially this is what governs until a new collective bargaining comes into place or there's a charge of failure to bargain in good faith. Correct. Okay. I hear from the NLRB. Thank you. Just wondering whether you know the answer to the question I was asking your colleague. Because I don't know the answer, so I'm not pretending I do. Your Honor, I hate to start out an argument. First of all, David's tied to the Labor Board. That stumps me too, but I've never been aware in a situation like this that an individual employer could bring a 301 student to the LNRA for an employee handbook. So that's why you think waivers should be the analysis, right? Well, Your Honor, the company's argument here was that this is a contract coverage case. There is no claim before the Board that absent contract coverage, there was any error in applying clear and unmistakable waiver, or that on the facts of this case, there was not or that there was any clear and unmistakable waiver. So what was the test? The Board applied the waiver test, right? Your Honor, the Board looked at both. The Board looked at- Assume we think that the Board is wrong in its application of a contract coverage claim, which the Board didn't really want to address anyway, right? They only did it for our benefit. Fair enough? Is that right? Well, the Board obviously is aware of the differences in this. Right. But its own preferred view is waiver. So your argument is that the other side never suggested that waiver was not the appropriate- we'll get to the merits of that argument in a minute. But your suggestion is they never suggested that the waiver was inappropriate? Absent a contract coverage. That if contract coverage was not the proper standard, that the Board erred by thereafter looking at a clear and unmistakable waiver test. When you say waiver, do you mean waiver by the union? Correct. Or just imagine a handbook was clear and explicit. It's exactly to every effect that would happen from a layoff. Correct. Well, looking at a clear and unmistakable waiver in the context of the language of the handbook. Why would waiver apply here? What right is the union either waiving or not waiving? Your Honor, the union isn't necessarily waiving any specific right. And the Board, again, in adopting- the central focus of the Board's decision is based on the company's argument that this is contract coverage, contract coverage, contract coverage. So in other words, you're saying the Board has no reason for its decision other than to reject the reason raised by the employer? Your Honor, the Board's decision is rejecting the contract coverage standard as it applies to this case because there is no collective bargaining agreement. There's no contract. And, in fact, the handbook itself, even putting aside the collective bargaining agreement, the handbook itself says it's not a contract. And then the Board then also, in the context of the administrative law judge's decision, did recognize looking under clear and unmistakable waiver that there is no clear and unmistakable waiver. Right, but does that make any sense in the circumstance in which the union has no rights to begin with? What? Your Honor, the Board is looking at the language of the handbook and looking at the handbook language. No, but the waiver doctrine, according to Pravina and all the other cases, say that the clear and unmistakable waiver- that this case presents us with the opportunity to explain and reaffirm our adherence to one of the oldest and most familiar Board doctrines, the clear and unmistakable waiver standard, in determining whether an employer has the right to make unilateral changes in terms and conditions during the life of a collective bargaining agreement. There's no collective bargaining agreement here. Everybody agrees on that, right? Correct, Your Honor. And so there was nothing for the union to waive or not waive. It stuck with the initial, whatever the initial conditions are. That's correct, Your Honor. So the notion of calling this waiver frankly doesn't make any sense to me. I understand it is something that the Administrative Law Judge had looked at, and in the context of the exceptions, again, the exceptions were focused simply that this is a contract coverage case. And so the Board did not go after reasonably explaining why it did not believe the contract coverage standard should apply here, but then did uphold the judge and whether the Board could have commented more about the application. I guess I'm somewhat clear what the Board was doing. If this handbook was explicit about every effect, both about layoffs and every effect, it was explicit laid out right there on the face of it, so it would meet clear and explicit language tests. But there wouldn't be any waiver by the union. So would, is the Board saying in that case, our clear and explicit waiver test would be met, or that it still wouldn't be met because while it is clear and explicit, it's not a waiver? I think in that particular situation, the Board would be looking at the language and whether the language was sufficient enough to cover effects barring it. There's a statutory obligation to engage in effects bargaining. And if an employer, in the initial terms and conditions of employment, had stated these were our layoff procedures, there will be no effects, there will be no impact of effects. There will not be any severance pay. There will not be any recall rates. Well, that's essentially writing effects bargaining out of the initial terms and conditions of employment. And that would be... So is this sort of a new addendum to the Burns case? And so, yes, you, employer, you can set it, but you have to be clear and explicit about every term you're setting, and anything that's not clear and explicit, then you have to negotiate over it. Your Honor, there are potential lines to be drawn in this case, but this is not such a case. And, first of all, if I could also back up for a minute, to the extent that Tremont is making this into a successor case or suggesting that this is essentially reaching new ground, or the argument about successorship from Tremont has kind of morphed over time. And initially before the Board, and, again, I don't mean to be repetitive, it was contract coverage, contract coverage, contract coverage, although noting that it was a successor. In its opening brief, Tremont noted that, as a successor, it gets to set the initial terms and conditions, which, of course, the Board doesn't dispute. And it's really only in the reply brief that it seems to be fleshing out this concept that there's somehow a difference between a successor situation, getting to set the initial terms and conditions, and a newly certified... Well, I'm just responding to the Board's decision, which applied this thing called clear and explicit waiver, both clear and explicit and waiver. And then, but never explained who was doing the waiving or who had to do the waiving. And I thought your answer to me was, well, what they really meant was just born successors have to be clear and explicit in their initial terms, and if they are, they'll be fine. I won't have to bargain. So I don't know that you can put this off on them. I'm trying to understand what the Board... No, in essence, it's correct. It'd be looking at the handbook here, the initial terms, the Board, just as it's looking at any other handbook or policy manual, it's looking at the language of... Aren't you saying, Andrew, that this is not collectively bargained, and therefore contract coverage doesn't apply? We're outside the range of a contract. So all what you're doing, just to pick up on what Judge Millett's saying, I think, is that you're interpreting the National Labor Relations Act, and here we do have to defer, unlike in the contract circumstance, and the Board is saying that we are going to, because we think it will enhance labor peace, enhance collective bargaining, we are going to have a clear and explicit requirement with respect to initial terms and conditions, and if you want to cover effects, you have to say so. Is that right? That would be correct, Your Honor. Why don't they say that? I mean, I think that would be an argument we would have before us. Both sides would have a chance to argue it. But that is not what they said. What they said was waiver, which I can't figure out. None of us can figure out what waiver is. I understand, Your Honor. And, again, a lot of this, if one goes back to the exceptions before the Board and the argument made before the Board by Tremont, it was trying to place this solely in the context of a contract coverage case. Yes, but you see, the problem with that, that's what you said when you first stood up. You said petitioner challenges the contract coverage. That's it. And so if we agree, let's assume we agree with you, with the Board, that this is not a contract coverage case because there's no contract, and let's assume all three of us have doubts about the waiver analysis, how can we deny the petition if we think the waiver analysis was part of the contract here? Well, Your Honor, again, to the extent that... In other words, if we agree with you that the contract coverage standard doesn't apply, how does that get us to denying the petition without more? How do we do that? Two points, Your Honor. First, the finding from the Administrative Law Judge appellate by the Board was that there was no notice and opportunity to bargain, that at the time the union was essentially presented with a fait accompli. And there's no serious dispute. So the only exception to that is whether the terms that were set forth in the employee handbook allows the employer to essentially avoid any obligation to bargain over the effects. But the Board's reasoning in its decision is that, well, there's no waiver. That's what the Board said. And it was in response to the argument, the response that the employer made to the outlook that it essentially presented a fait accompli or gave timely notice, was essentially we didn't have to give timely notice because this handbook is a contract and it falls under contract coverage, period. So I'm reading the motion of the National Labor Relations Board requesting remand of the case to the Board, which is at J369. And it says the Board expressly did not decide the issue. In finding that there had been no challenge to the standard, the Board overlooked that the company argued to the Board that the question of waiver normally does not come into play with respect to subjects already addressed by terms and conditions governing employment. Instead, the proper inquiry is whether it's covered. But if you say the proper inquiry isn't whether it's covered, it doesn't resolve the question of the fact that waiver normally doesn't come into play with respect to subjects already addressed in terms of conditions. It seems you still have to give a reason. They're arguing you have to have a reason why waiver applies. They propose contract coverage, but you don't give a reason, you know, you explain why that doesn't apply, but you don't explain the reason for why waiver applies. Your Honor, I understand the Court's concern. If we wanted to remand, how would we award a remand on this subject for an explanation? For the remand, as far as explaining that there's actual waiver taking place by the union, I think that there's... Or to come up with some other theory, like the Interpretation of the National Relations Act theory. But the Board is acting consistently with successorship principles here and the very basic principles that there's an obligation to have effects bargaining, which is something that was discussed in the Administrative Law Judges' decision, to the best of my knowledge. And there's no inconsistency with that here, that an employer has an obligation to bargain over the effects. Again, there can be a lot of lines drawn. Not if effects is included within the initial terms, right? Correct. But this is not a situation, and I see that my time is up, if I can... Sorry. There are a lot of lines, and I understand that there are a lot of hypotheticals that can be asked in a type of case like this. If this was a case like Monterey, where, for example, the employer said that there will be from one to three weeks of severance pay, depending on some particular factors, and it ended up giving two weeks severance pay, then there would be an issue of, well, did this fall within the general range of what the employer could do in setting the initial terms and conditions of employment? This is a situation where the employer did not include any effects of its layoffs. It's tantamount to simply writing effects bargaining out of the statute. Let me ask you about those two things. One thing I raised with the other side, severance pay is the effect you mentioned in your brief. Why doesn't this cover severance pay? It says no severance pay. Severance pay is at company discretion. Your Honor, and again, the company did not rely on that in its brief to this court because it's one thing to affirmatively set forth an initial term and condition. It's another thing to essentially take something that there's a statutory obligation to bargain over and essentially write that out of the initial terms. Imagine it said, and we will not bargain with you about effects because we're not going to give any benefits to effects. Do you think that would be unlawful? Yes, Your Honor. What if it said effects? The employee will not be entitled to any effects as a consequence of the layoff. Could they not set that as an initial term? At the time these were being set, the union is not in the picture yet. Right. Whether it's a newly certified union or a successor situation, you're into that. But once a union comes and is a successor, once the employer hires a representative compliment and the union comes into play, it's true.  But I would suggest that an employer, as part of those initial terms and conditions, once the union comes into play, can't claim, well, we're not going to bargain over effects because we said so. No, of course they'll bargain in the context of a collective bargaining agreement. But short of that, until such an agreement is resolved and we have a new set of terms and conditions, if they say we will not give you anything for the effects, doesn't that hold? Isn't that like saying we're going to lay you off and we're not going to bargain, and therefore we don't have to bargain about whether we're going to lay you off? It's not the same, Your Honor, because there's a statutory requirement to bargain over the effects of the decision. There's a statutory requirement to bargain over terms and conditions. Yes, and in that situation, if an employer is setting forth those actual initial terms and setting forth the layoff procedure and setting it forth in enough specificity that there's no violation over an obligation to bargain, that's one thing. But it's another, something wholly separate to assert or for an employer to assert that it's not going to bargain over effects because we say so. Let me be clear again. You agree, and the Board held, that they can do layoffs without any bargaining, right? Well, it wasn't the Board. It was the decision made by the Board's general counsel. You don't dispute that, and the Board didn't dispute that. The only thing the Board came up with was on the effects side, correct? Correct. Well, the Board, once the complaint gets dismissed, the issue isn't before the Board. Let me just ask you as a matter of labor law then. Yes. Okay. The initial terms and conditions include we can lay you off for any reason at any time, okay? Can they lay off for any reason at any time, or do they have to bargain about that? Your Honor, for the initial terms and conditions, if something is so broad that is essentially giving the employer complete leeway to do anything it wants and there's a union on the scene, I would suggest that no, that the Board would very likely have an issue with that. Well, then why didn't the Board have an issue with that? Why wasn't the layoffs also a problem? And I can't speak for the Board's general counsel when it was investigating the complaint, but it did view that the layoff procedures were setting forth enough specificity and that there might have been a little bit of leeway that Traymont had within that layoff procedure, but there was a very specific layoff procedure that was set forth in the handbook, and the Board's general counsel did find that Traymont followed that procedure. I have to say, now you're arguing something that if this is the Board's real intention, then we really have to remand it and hear this, because I was under the impression that the Board agreed that things that were in the initial terms and conditions as a result of burns, the employer could do until there was another collective bargaining agreement that set new ones. You are telling me something different. And if that's the Board's view, I don't read that in the Board's opinion. So if the Board really thinks that, then that's an argument. It's a new argument. It's not one I have ever heard before, but the Board is certainly entitled to present it. So in Provena, the Board says that when they had initial terms that set pay bans, the employer could set the actual pay, right? In the Monterey case, that's correct, Your Honor. Was it Monterey? Yeah. Yeah, Monterey, I'm sorry. And that was initial terms and conditions, right? Correct, and that was in a successor situation. That's right. And so you wouldn't say they couldn't do that without bargaining over that, even though pay is obviously a mandatory subject of bargaining. Correct, because the Board found that there was a sufficient initial term and condition. There might have been a little flexibility as to the particular pay. So imagine the initial terms and conditions says we will set the pay, period. Then that would definitely be okay, right? And no bargaining about that. No, Your Honor. Your Honor, as a successor employer, if the employer wants to change the terms and conditions from the predecessor, the employer has to announce the intent that it's going to change terms and conditions, and it has to inform the employees of what those new terms and conditions are going to be. Yeah. And there can sometimes be issues as to does it have to be done before hiring, can it be done contemporaneously with hiring. I'm assuming it's before hiring, okay. Generally before, there can be a few. So in Monterey it was okay for them to say we're going to set the pay band, right? And therein, therein we're going to set the pay. Correct, but it was within a very defined pay band for new employees. And so the Board did find that that was okay. That's different than simply, I'm sorry, I don't. So I am confused. So imagine in this case they said for new employees, we can lay you off for any reason, and we will not give you any benefits as a consequence of laying off. That's what the handbook says, those words. Is that not enough to allow them to do that without having to bargain over it? They can bargain over it for another collective bargaining agreement, but until there is another collective bargaining agreement, can't they do that? Because, Your Honor, once the union comes onto the scene, there are certain statutory bargaining requirements, and to simply have an outright refusal that the employer isn't going to do something is very different than saying affirmatively, here's what our terms and conditions, here are our actual policies, here's what we're going to do. How can the Board, just repeating what Judge Garland said, how can the Board, how can the company then have adopted the language in the handbook that's there now? I'm as bewildered as Chief Judge Garland. I didn't understand that this was your position. I'm sorry, Your Honor, I'm not. Sorry, I mean, based on what you said, I don't understand how the provision in the handbook about layoffs is lawful. With respect to layoffs, Your Honor? Yeah. It reserves the right to layoff employees. It's reserving the right and setting forth a very specific procedure as to how those layoffs will take place. Yeah. And that's a term and condition that the Board's general counsel in investigating the case. But that wasn't bargained with the union. They just announced it in their handbook. Correct, because as a successor, it has the right to set initial terms and conditions. Well, that's what I thought. And the union wasn't allowed to bargain over those layoffs, right? The union couldn't say the refusal to bargain over those layoffs is not for labor practice. The Board's general counsel investigated the charge over the refusal to bargain over the layoffs and found no merit to it. The Board obviously did not address the issue. Do you think the law, they were wrong then? Do you think general counsel's law had a law? Is that what you're saying? No, Your Honor, I can't answer for the general counsel. I'm just saying that it doesn't represent the Board's position. It's just something I heard from the Board. But now you're taking a position that the Board did not state. I'm not suggesting that the Board would have found a violation had the case eventually gone to the Board. I'm just suggesting that there is a difference between affirmatively setting forth a layoff procedure versus with effects bargaining, an employer simply stating it's not going to engage in effects bargaining. There's a statutory... Not engage in effects bargaining. We're not going to give you any effects. You're on your own. You're on your own. If we want to lay you off, we will. I'm not saying this is good practice, and we're not going to give you any benefits during the time. We're not going to give you severance, which is what they said, and we're not going to give you anything else. You're saying they can't do that. Your Honor, I would only suggest that there could very well be a difference between affirmatively setting forth a specific policy or procedure and essentially writing effects bargaining out of any obligation that it might have with the union once the union comes onto the scene. What you're saying, I think, sounds like what's required to qualify as an initial term of effect under Burns, and that is that it has to have some detail and structure to ensure it's not completely arbitrarily done by an employer. Is that what we're talking about here? Arguably, but again, I don't mean to get awry here. This is not something that the court does need to reach. The violation here is that there is no proper notice given to the union, and there's no serious dispute that this was essentially a fait accompli with the union only receiving specific details several weeks later, and the employer trying to defend its action. We all get to that question about notice by first having to decide whether effects are already addressed in this document, and that's where I think we're getting confused because this handbook already addresses effects. It not only talks about severance. It talks about unemployment compensation. It talks about letters of recommendation. It talks about you're not entitled to notice. Is that real employment? You have no guarantee you'll be working tomorrow. All those things are in there and sound, at least at some level, like some effects being addressed but maybe not recall and other things, and so what we're trying to figure out, I think, is whether we'll get to notice if, in fact, it's already addressed here. I understand the court's concern, and I can only reiterate that the argument that the company raised before the board was that contract coverage should apply and that applying contract coverage, the mere fact that it set forth a layoff procedure, means that it doesn't have to bargain over effects. And once the board very reasonably found that contract coverage does not excuse the trademark's obligation to bargain and that just because there's a layoff procedure doesn't mean you don't have to bargain over effects under contract coverage, that that is sufficient to have the board's decision enforced in light of what Tremont actually argued to the board. It is never disputed that if a waiver analysis is applied, that the board erred by finding that there was no waiver here. Okay. Questions? Thank you. Thank you, Your Honor. Any time left? We'll give you another two minutes. If you want it, you don't have to trick your head like maybe you would. No, no. Thank you, Your Honor. No, I guess I just want to address one issue, and that's the confusion I guess I have in listening to the board's argument here in that there seems to be some sort of distinction between what the board decided in this case and what the board is arguing before this court. I want to direct Your Honor's attention to pages 16 and 17 of the board's brief in this case. It says, Before this court, there is no dispute, as the board found, that Tremont is a burn successor, that it lawfully unilaterally established the initial terms and conditions of employment, and that its decision to lay off the 12-unit employees was not subject to bargaining. So I don't understand the distinction that's trying to be made here. I think the board in its brief is basically affirming what the board's decision was in this particular case. With respect to that, the language itself, and there's been some dispute about the specificity that's necessary for the contract language to determine whether or not there's an obligation to bargain over the decision. And in this case, I don't think that there could be any clearer language with respect to the decision. It says, From time to time, management may decide to implement a reduction in force. Again, this is taken from the case, the word implement is utilized in a case that appeared before this circuit, S&F Market Street Healthcare. There's an argument you made in the brief. Let me just ask, why didn't you reference the at-will provision that Judge Millett mentioned? Why? It says you can get rid of anybody at any time for any reason without notice. That seems to be even stronger than the layoff argument. Yeah. Why is that not part of your claim that this is pretty specific? Because, again, I think there was a distinction. The employee handbook was to address the employees that were party to the bargaining unit, as well as the employees that were non-bargaining unit employees as well. And the concern with respect to that was we wanted to address the at-will status of the non-bargaining unit employees, recognizing that, again, we set the initial terms and conditions, and the employees who were part of the bargaining unit had a different standard. So before you have a collective bargaining agreement, you would agree that you didn't have the right to drop people at-will, even before there is a collective bargaining agreement? No. If there's no collective bargaining agreement, they would be employed at-will. But that part of the handbook, is that part of the handbook only aimed at, does it say? This is what I didn't understand. No. Is it only aimed at people who aren't? No, it doesn't make that distinction, Your Honor. That's what you meant. Yes. I got it now. That explains that. Further questions? No. All right. Thank you. We'll take the matter under submission. Thank you, Your Honor.
judges: Garland, Tatel, Millett